IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 5, 2019

## STATE OF TENNESSEE v. DAVID LASSITER

**Appeal from the Circuit Court for Madison County**
**Nos. 17-420-423, 17-483-485      Donald H. Allen, Judge**

_____

### No. W2018-01020-CCA-R3-CD
_____

The Defendant, David Lassiter, pled guilty to four counts of theft of property valued at $2,500 or more and four counts of theft of property valued at more than $1,000. He received an effective sentence of sixteen years. On appeal, the Defendant challenges the trial court's denial of alternative sentencing and the imposition of partial consecutive sentences. Upon review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

George Googe, District Public Defender; and Gregory D. Gookin, Assistant District Public Defender, for the Appellant, David Lassiter.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

From April 10, 2017, through June 6, 2017, the Defendant committed eight thefts in Madison County. During this time, the Defendant took numerous trailers, lawn equipment, and other tools. His co-defendant in three of the thefts also entered a guilty plea.

At the plea hearing, the State informed the trial court of the evidence that would have been presented had the Defendant proceeded to trial. According to the State, from April 10, 2017, to June 6, 2017, the Defendant committed eight different thefts against six different victims. The Defendant pled guilty to theft of the following items: a zero-turn lawn mower valued at $6,000 from Byrd Implement; three trailers, each valued over $1,000, taken on two separate dates, from Compressors & Tools, Inc.; various pieces of lawn equipment valued over $2,500 from Mr. Robert Pierce; a trailer valued over $1,000 from Sam's Club; and a trailer valued over $2,500 from Bob's Janitorial Service. As part of the Defendant's guilty plea, the State dismissed five counts of criminal trespass.

At the sentencing hearing, victims of the thefts testified. Mr. Brian Byrd testified on behalf of Byrd Implement Company that a zero-turn lawn mower, valued at $6,000, was taken from his place of business on or about June 5, 2017. The lawn mower was recovered and returned to Mr. Byrd.

Mr. Timothy Jones, a business manager for Compressors & Tools, Inc., testified that around May 17, 2017, two trailers with a combined value of $3,250 were taken, and neither one was returned. Around June 5, 2017, another trailer, valued at over $1,000 was taken and was later returned in a damaged condition. Mr. Jones said the cost of repairing the trailer was $250.

Mr. Douglas Taylor, the owner of Taylor Construction & Restoration, testified that various power tools and generators valued at $4,100 were taken and that none of the items were returned. The State announced that one of the victims, Mr. Robert Pierce, would not be testifying, but that he did request restitution in the amount of $2,500. The State notified the trial court that Mr. Pierce's statement regarding the requested restitution could be found in the presentence report.

Ms. Paulette Gallagher, a manager at Sam's Club, testified that a trailer valued at approximately $1,249 was taken from Sam's Club on April 10, 2017, and the trailer was not returned.

Ms. Ida Reeves, the operations manager at Bob's Janitorial Service, testified that a trailer valued at $3,500 was taken on June 3, 2017, and that the trailer was later returned with damage. She testified that the damage was in the amount of $39.

Officer John Foren, an investigator with the Madison County Sheriff's Department, testified on behalf of the Defendant. Officer Foren investigated the cases involving trailer thefts. He interviewed the Defendant, who admitted he was involved in numerous thefts of trailers and informed him where some of the trailers and the zero-turn lawn mower could be located.

Officer Jeff Herndon, an investigator with the Jackson Police Department, also testified for the Defendant. Officer Herndon conducted a separate interview of the Defendant, who provided the location of several of the stolen items.

Ms. Lauren Wood, the Defendant's daughter, testified that the Defendant has a substance abuse problem but that prior to these thefts, she was not aware of the seriousness of his addiction. She said she hoped the Defendant could receive rehabilitation. Ms. Lynn Atwill, the Defendant's mother, testified that she knew that the Defendant has suffered from an addiction to crack cocaine for the last twenty years. She said that the Defendant has participated in multiple thirty-day treatment programs in the past but believed that the Defendant needed a long-term treatment program in order to overcome his addiction.

Mr. Steve Robinson also testified for the Defendant. He is an employee at Warrior's Center, a faith-based, long-term rehabilitation center for men. Warrior's Center offers long-term, residential treatment programs. He said the Defendant had been accepted into this program.

The Defendant elected to testify at the sentencing hearing. He emphasized that he had admitted his involvement in these thefts when he pled guilty, at the sentencing hearing, and in his initial interviews with Investigators Foren and Herndon. He acknowledged that he has similar pending theft charges in Haywood and Weakley Counties. The Defendant testified that he has had a crack cocaine addiction for the last twenty years. He was sober for almost seven years after serving a previous sentence that ended in 2010. In 2016, during a theft that occurred at a convenience store, the Defendant met his co-defendant, Mr. Thaddeus Ray. The Defendant pled guilty to the theft that occurred at a convenience store in January 2017 and was on supervised probation when he committed the thefts that are the bases for the present convictions.

The Defendant stated that he committed the thefts to "fuel a drug habit." After taking the trailers, he tried to sell the trailers. In his time in custody, the Defendant graduated from the Celebrate Recovery drug treatment program and obtained a certificate in a Bible course. He said he wanted to attend the long-term treatment at the Warrior Center, and he read a letter apologizing to the victims.

The trial court questioned the Defendant about his criminal history beginning in 1997 and whether he sought drug treatment at that point. The Defendant admitted that he has had a problem with crack cocaine since 1989. The court asked the Defendant what he had done in the last twenty years to confront his addiction. The Defendant stated that he went to a short-term program and was involved in a nine-month treatment program while previously incarcerated. The Defendant acknowledged that he "never took the

support that I'm supposed to use after these programs and used it, you know, sponsors and call people. I never did that. I think that was my downfall."

The trial court also questioned the Defendant about the numerous times he had previously violated the terms of his probation and parole. The trial court found that on ten prior occasions while the Defendant was on probation he violated the terms of his probation. In 2008, while the Defendant was on parole he received an additional conviction. This incident occurred after the Defendant had completed the nine-month drug treatment program. More recently, the Defendant was on supervised probation when he committed the current offenses.

At the conclusion of the Defendant's testimony, the State submitted that the Defendant is a Range II offender based on his prior convictions, which included eight counts of forgery, multiple theft convictions, and an identity theft conviction. The State previously filed a notice seeking an enhanced punishment. The State asserted that the trial court should consider the Defendant's extensive criminal history in making its decision regarding both the length of the individual sentences and whether to impose consecutive sentencing.

The Defendant agreed that he was a Range II offender. He requested that as part of his sentence, he be required to attend a long-term inpatient drug treatment program. He asserted that he cooperated with the investigators and that he had never displayed any type of violent behavior in relation to his prior or current convictions.

The trial court issued its order orally and was very meticulous in articulating its findings regarding sentencing. The trial court considered the evidence presented during the guilty plea and sentencing hearings and the presentence report. The court noted that it considered the "principles of sentencing and the arguments that have been made by counsel as to sentencing alternatives." Additionally, it considered the nature and characteristics of the criminal conduct involved, enhancement and mitigating factors, statistical information provided by the Administrative Office of the Courts, and the Defendant's testimony.

The trial court first determined that the Defendant was a Range II offender. The court noted that four of the thefts were Class D felony offenses and that the range for a D felony is four to eight years of incarceration. *See* T.C.A. § 40-35-111(b)(4). The other four offenses are Class E felonies and the range for a E felony for a Range II offender is two to four years incarceration. *See* T.C.A. § 40-35-111(b)(5).

The trial court thoroughly discussed the Defendant's criminal history in its decision to deny alternative sentencing as well as its decision to impose partially

consecutive sentences. Importantly, the trial court noted that prior to the Defendant's current convictions, he had thirteen prior felony convictions. Several of the Defendant's prior convictions were committed within a twenty-four-hour time period and accordingly did not increase his offender classification. *See* T.C.A. § 40-35-106(b)(4). The Defendant's criminal history consists of over eight forgeries, multiple felony theft convictions, and numerous misdemeanor convictions, including identity theft and attempted forgery.

The trial court applied four enhancement factors pursuant to Tennessee Code Annotated section 40-35-114. First, the trial court found "the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(1). The trial court found that in addition to the Defendant's history of criminal convictions he also had a history of criminal behavior, his self-reported drug use. Second, the trial court found that the Defendant "was a leader in the commission of an offense involving two (2) or more criminal actors." T.C.A. § 40-35-114(2). Third, the trial court found that the Defendant "before trial or sentencing in this case has failed to comply with the conditions of a sentence involving release into the community." *See* T.C.A. § 40-35-114(8). Finally, the trial court found that the Defendant committed eight felony thefts while he was "[r]eleased on probation." T.C.A. § 40-35-114(13)(C). The trial court gave great weight to the Defendant's criminal history, the fact that he committed these offenses while on probation, and his history of failing to comply with conditions involving release into the community. The trial court gave moderate weight to the Defendant's role as the leader in the thefts.

The trial court applied the following mitigating factors pursuant to Tennessee Code Annotated section 40-35-113. First, the court found that the Defendant's "criminal conduct neither caused nor threatened serious bodily injury." T.C.A. § 40-35-113(1). Next, the trial court found the Defendant "did assist the authorities in locating and recovering some of the property that was taken." The trial court gave slight weight to the fact that the Defendant's conduct "neither caused nor threatened serious bodily injury." The trial court also gave very slight weight to the Defendant's assistance in recovering some of the stolen property. Additionally, the trial court noted that it gave "consideration to the fact that he has pled guilty and he has accepted responsibility for his actions in this case." The trial court indicated that it awarded moderate weight to the Defendant's participation in rehabilitative programs while incarcerated.

The trial court spent a great deal of time discussing the Defendant's "inability to comply with the conditions of release into the community." The trial court discussed each of the ten times the Defendant had previously violated the terms of his probation, dating back to 1996. The trial court found that the Defendant has "had multiple chances

to be on probation. He gets out on probation and then he doesn't report. He absconds." In deciding whether to impose an alternative sentence, the trial court determined that "it appears to me that he would not abide by the terms of probation or any type of release program." The trial court determined that the Defendant should receive the maximum sentence for each of his convictions within his range. The court imposed an eight-year sentence on each of the convictions of theft of property valued at $2,500 or more and a four-year sentence for each of the convictions of theft of property value at over $1,000.

The trial court found that consecutive sentences were warranted based on the Defendant's extensive criminal history. The trial court structured the sentences into two different groups. The sentences within each group run concurrently to each other and consecutively to the other group. The trial court ordered the sentences for the D felony theft committed against Byrd Implement, one of the E felonies committed against Compressors & Tools, Inc., and the D felony committed against Bob's Janitorial Service run concurrently with each other but consecutively to the remaining counts. It ordered the sentences for the D felony committed against Taylor Construction, the two E felonies committed against Compressors & Tools, Inc., the D felony committed against Mr. Pierce, and the D felony committed against Sam's Club run consecutively to each to other but concurrently to the remaining sentences. The trial court entered an effective sentence of sixteen years.

## ANALYSIS

### I. Alternative Sentencing

The Defendant argues that the trial court erred in denying alternative sentencing. However, he "concedes that the trial court did not err in its application of various enhancement factors against him." The State maintains that the trial court did not abuse its discretion in denying the Defendant alternative sentencing.

This court reviews a trial court's denial of alternative sentencing under an abuse of standard review with the presumption of reasonableness to sentences that fall within the correct range. *State v. Caudle*, 388 S.W.3d 273, 278 (Tenn. 2012) (citing *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012)). In *Caudle*, the court stated that the abuse of discretion standard articulated in *Bise* also applies to "questions related to probation or any other alternative sentence." *Id.* at 278-79. Appellate courts should affirm a sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10.

Trial courts are required to consider the following when imposing a sentence:

(1) The evidence, if any, received at trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;

(7) Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and

(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

T.C.A. § 40-35-210(b). The trial court is required to consider the Defendant's potential for rehabilitation or treatment in determining whether to impose an alternative sentence. T.C.A. § 40-35-103(6). A defendant who possesses a "criminal histor[y] evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." T.C.A. § 40-35-102(5).

The trial court did not abuse its discretion in declining to impose alternative sentencing. The trial court sentenced the Defendant as a Range II offender and as such he is not considered to be a favorable candidate for alternative sentencing. *State v. Rabon D. Gibson*, No. M2011-01377-CCA-R3-CD, 2012 WL 830177, at *3 (Tenn. Crim. App. Mar. 12, 2012) (citing T.C.A. § 40-35-102(6)). The trial court articulated specific findings regarding each of the factors enumerated in Tennessee Code Annotated sections 40-35-210(b) and 40-35-103 in denying alternative sentencing. Importantly, the trial court found that the Defendant has previously failed to comply with the terms of probation and parole. The Defendant has an extensive criminal history encompassing thirteen prior felony convictions. The record supports the trial court's determination that confinement is necessary based on the Defendant's criminal history and the fact that he committed the current offenses while on probation. In rendering its order, the trial court devoted a significant discussion to the Defendant's addiction problems but ultimately decided that the Defendant had had numerous opportunities to seek long-term treatment and declined to seek help. Further, the Defendant does not dispute the trial court's application of various enhancement factors. Accordingly, the Defendant has not shown how the trial court abused its discretion when declining to impose an alternative sentence.

## II. Consecutive Sentencing

The trial court has the sound discretion to determine whether a sentence should be served concurrently or consecutively. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). A trial court's decision to impose consecutive sentencing is reviewed under an abuse of discretion standard with a presumption of reasonableness. *Id.* A trial court abuses its discretion when it "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). This court will affirm a sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10.

A trial court is permitted to impose consecutive sentences when it provides reasons on the record that establish one of the seven factors enumerated in Tennessee Code Annotated section 40-35-115(b). The trial court applied two of these factors in imposing partially consecutive sentences. The trial court found that the Defendant "is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2). The trial court also found that the Defendant was sentenced in the current offenses while he was on probation. T.C.A. § 40-35-115(b)(6) ("The court may order sentences run consecutively if the court finds by a preponderance of the evidence that . . . [t]he defendant is sentenced for an offense committed while on probation."). It is clear from the record that the trial court thoroughly discussed the Defendant's prior criminal history, including each of his prior thirteen felony convictions and the fact that the Defendant was on probation when he committed the current felonies. We conclude that the trial court did not err in imposing partial consecutive sentences.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE